**IN THE UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| INHANCE TECHNOLOGIES, LLC; INHANCE TECHNOLOGIES HOLDINGS, LLC; INHANCE TECHNOLOGIES HOLDINGS CO-MEMBER, INC.; LEE CONTAINER CORPORATION, INC.; and CLARKE MOSQUITO CONTROL PRODUCTS, INC., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>)<br>) |

Case No. _____

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff, Navigators Specialty Insurance Company ("Navigators"), files this Complaint for Declaratory Relief against Defendants Inhance Technologies, LLC ("Inhance Technologies"), Inhance Technologies Holdings, LLC ("Inhance Technologies Holdings"), Inhance Technologies Holdings Co-Member, Inc. ("Inhance Co-Member") (Inhance Technologies, Inhance Technologies Holdings, and Inhance Co-Member, collectively "Inhance Defendants"), Lee Container Corporation, Inc. ("Lee Container"), and Clarke Mosquito Control Products, Inc. ("Clarke")

**PARTIES**

1.      Navigators is a New York corporation with its principal place of business in New York, New York.

1

2.      Inhance Technologies, is a Delaware Limited Liability Company with its principal place of business located in Houston, Texas, and, based on information and belief, all of its members are residents of Texas.

3.      Inhance Technologies Holdings is a Delaware Limited Liability Company with its principal place of business located in Houston, Texas, and, based on information and belief, all of its members are residents of Texas.

4.      Inhance Co-Member is a Delaware Corporation with its principal place of business located in Houston, Texas.

5.      Lee Container is a Georgia Corporation with its principal place of business located in Homerville, Georgia.

6.      Clarke is an Illinois Corporation with its principal place of business located in Illinois.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorneys' fees, and costs.

8.      Venue is proper in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims asserted below occurred within the jurisdictional boundaries of this Court, in that Inhance Technologies' conduct forming the basis of the claim for which it seeks coverage occurred in Texas and the relevant insurance policy was issued in Texas.

9.      This matter is properly filed pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, because an actual controversy of a ripe and justiciable nature exists between Navigators,

and the Defendants as to whether insurance coverage exists for the claims asserted by Clarke.
The Court's declaration will confer certainty on the parties and serve the interests of justice.

## FACTS

**A.      The Insurance Policy**

10.      Navigators issued policy no. HO21NP3Z07Q5NIC, which includes both
Integrated General and Pollution Liability Insurance ("Primary Policy") and Environmental
Excess Liability Insurance ("Excess Policy") (the Primary Policy and the Excess Policy are
collectively referred to herein as the "Policy") to Inhance Technologies, LLC as the **first named
insured**[1] effective from March 1, 2021 to March 1, 2022.

11.      Inhance Technologies Holdings is an additional named insured under the Policy
pursuant to Endorsement No. 1-P.

12.      Lee Container is an insured under the Policy pursuant to SECTION II – WHO IS
AN INSURED, paragraph 3 because Inhance Technologies agreed in a contract with Lee
Container to include Lee Container as an insured under the Policy; but pursuant to paragraph 3,
Lee Container is only an insured with respect to **bodily injury**, **property damage**,
**environmental damage**, or **emergency cleanup costs** caused in whole or in part by the acts or
omissions of Inhance Technologies.

13.      The Primary Policy is made up of two coverage parts which in turn contain
multiple different coverages, and the policy limits and deductible vary depending on the
applicable coverage.

14.      Coverage Part 1.A., "Bodily Injury and Property Damage Liability
(Premises/Operations and Products / Completed Operations)," has an Each Occurrence Limit of

---

[1] Words in bold signify terms that are defined by the Policy.

$1,000,000, a Primary General Aggregate Limit of $2,000,000, and a Products/Completed Operations Aggregate Limit of $2,000,000.

15.     Coverage Part 1.D., "Pollution Liability for Your Product; a Hostile Fire; or Building Equipment," is subject to an Each Occurrence Limit of $1,000,000.

16.     Coverage Part 1.G., "Product Recall Expense," has an Each Occurrence Limit of $250,000, subject to a deductible of $5,000 each occurrence, and an Aggregate Limit of $250,000, subject to 20% insured participation.

17.     The Excess Policy has limits of $5,000,000.00 for "Each Event" and in the aggregate.  The Excess Policy applies only to loss to which the **controlling underlying insurance** applies and that exceeds the limits of the underlying insurance. The controlling underlying insurance includes the Primary Policy. The Excess Policy is generally subject to the same terms, conditions, exclusions, limitations, definitions, and warranties as the Primary Policy. A true copy of the Primary Policy and Excess Policy are attached hereto as **Exhibit 1**.

18.     The Primary Policy provides that "[t]hroughout this policy, the words 'you' and 'your' refer to the **first named insured**, and any other person or entity qualify as a named insured under this policy."

19.     SECTION II. WHO IS AN INSURED in the Primary Policy provides that:

> In addition to the named insured(s) listed in Item 1. of the Declarations, or any named insured(s) added to this policy by endorsement, where applicable and to the extent outlined herein, the following person(s), entity(ies), or organization(s) are an insured under this policy:
>
> 1.  If you are designated in the Declarations as:
>
> ***
>
> > d.  an organization other than a partnership, joint venture, or limited liability company, you are an insured. Your **executive officers** and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders….

4

2. Each of the following is also an insured:

\*\*\*

    e. any subsidiary, associated, affiliated or allied company or corporation, including subsidiaries thereof, of which you have at least 50% ownership interest as of the **inception date**.

3. Any person or organization, other than a third party carrier, with whom you agreed in a written contract, written agreement or a permit to include as an insured, but only with respect to **bodily injury**, **property damage**, **environmental damage**, or **emergency cleanup costs** caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf, arising out of your operations, **your work**, equipment or premises leased, rented or owned by you, or **your products** which are distributed or sold in the regular course of a vendor's business….

\*\*\*

5. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no similar insurance available to that organization….

6. Any person or organization that has at least a 50% controlling interest in you but only with respect to **bodily injury**, **property damage**, **environmental damage**, or **personal and advertising injury** arising solely out of their financial control of you….

20.     Coverage Part 1, the only potentially applicable coverage section, provides "General Liability" coverage. Coverage Part 1.A., "Bodily Injury and Property Damage" states as follows:

We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. This insurance applies only if the **bodily injury** or **property damage**:

(1) is caused by an **occurrence** that takes place in the **coverage territory**; and

(2) occurs during the **policy period**.

21.     Relevant here, in addition to the "Common Exclusions" applicable to all of Coverage Part 1, and which will be discussed below, Coverage Part 1.A. is subject to an

exclusion specific to Coverage Part 1.A and which provides that Coverage Part 1.A. does not

apply to:

**Pollution**

**a.** **bodily injury** or **property damage** based upon or arising out of any **pollutant(s)** or **pollution incident(s)**; or

**b.** any cost, charges, or expenses arising out of any:

**(1)** request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up remediate, remove, contain, treat, detoxify, immobilize, neutralize, or in any way respond to, or assess the effects of **pollutant(s)** or **pollution incident(s)**….

22. Coverage Part 1.D., "Pollution Liability for Your Product; a Hostile Fire; or Business Equipment" provides in relevant part, as follows:

**a. Products Pollution Liability**

Subject to paragraph c. below, we will pay those sums that the insured becomes legally obligated to pay as damages because of:

(1) **bodily injury**, **property damage** or **environmental damage** resulting from a **pollution incident** caused by **your product** and included in the **products-completed operations hazard**; or

(2) **bodily injury** or **property damage** caused by ingestion or inhalation of, exposure to, or contact with, any fumes dust, particles, vapors, liquids or other substances originating from **your product** and included in the **products-completed operations hazard**.

**b. Pollution Liability to Third Parties From a Hostile Fire or Building Equipment**

Subject to paragraph c. below, we will pay those sums that the insured becomes legally obligated to pay to third parties as damages because of:

**(1)** **bodily injury** sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool, or dehumidify the building, or equipment that is used to heat water for personal use…; or

**(2)** **bodily injury**, **property damage** or **environmental damage** caused by heat, smoke, or fume s from a **hostile fire**.

**c.** Coverage Parts 1.D.1.a. and 1.D.1.b. immediately above, apply only if the **bodily injury**, **property damage** or **environmental damage**:

**(1)** is caused by an **occurrence** that takes place in the **coverage territory**; and

**(2)** occurs during the **policy period**.

23. Coverage Part 1.G, "Product Recall Expense" states in relevant part:

a. We will reimburse you for covered **product recall expenses** incurred by you because of **product recall** to which this insurance applies. This insurance applies to a **product recall** only if the **product recall** is initiated in the **coverage territory** during the **policy period** because:

(1) you determine that the **product recall** is necessary; or

(2) an authorized government entity has ordered you to conduct a **product recall**.

b. We will reimburse **product recall expenses** only if the product that is the subject of the **product recall** was manufactured or distributed no more than twelve (12) months prior to the beginning of this **policy period**.

\*\*\*

d. The initiation of the **product recall** will be deemed to have been made only at the earliest of the following times:

(1) when you first announced, in any manner, to the general public, your vendors or to your **employees** (other than those **employees** directly involved in making the determination) your decision to conduct or participate in a **product recall**. This applies regardless of whether the determination to conduct a **product recall** is made by you or is requested by a third-party….

24. Relevant here, in addition to the "Common Exclusions" applicable to all of Coverage Part 1, and which will be discussed below, Coverage Part 1.G is subject to the following exclusions specific to Coverage Part 1.G, and which provide that the coverage part will not pay **product recall expenses** for:

a. **Defense of Claim**

the defense of a **claim** or **suit** against you for liability arising out of a **product recall**.

\*\*\*

h. **Known Defect**

a **product recall** initiated because of a **defect** in **your product** known to exist by the insured, or the insured's **executive officers**, prior to the date when this Coverage Part was first issued to you or prior to the time **your product** leaves your control or possession.

\*\*\*

j. **Third Party Damages, Legal Liability, Fines and Penalties**

any compensatory damages; any legal liability of any kind; or any fines, penalties, punitive or exemplary, or other non-compensatory damages imposed upon the insured.

25. All of the coverages in Coverage Part 1 are subject to the following "Common

Exclusions" which state that those coverages do not apply to:

**a. Expected or Intended Injury**

**bodily injury**, **property damage**, or **environmental damage** expected or intended from the standpoint of the insured.

\*\*\*

**l. Damage to Impaired Property or Property Not Physically Injured**

**property damage** or **environmental damage** to **impaired property** or property that has not been physically injured, arising out of:

**(1)** a **defect** deficiency, inadequacy or dangerous condition in **your product** or **your work**; or

**(2)** a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use or other property arising out of a sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

\*\*\*

**v. Known Injury or Damage**

**bodily injury**, **property damage** or **environmental damage** that occurred in whole or in part prior to the **policy period** and was known prior to the **inception date** to any **responsible insured**. Any continuation, change, or resumption of such **bodily injury**, **property damage** or **environmental damage** during or after the **policy period** will be deemed to have been known prior to the **policy period**.

26. Coverages 1.A and 1.D are also subject to a "Recall of Products Work or

Impaired Property" exclusion which states that those coverages do not apply to:

**m. Recall of Products, Work or Impaired Property**

damages claimed for any cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement adjustment, removal or disposal of:

**(1) your product**;

**(2) your work**; or

**(3) impaired property**;

if such product, work, or property is withdrawn or recalled from the market or from use by any other person or organization because of a known or suspected **defect**, deficiency, inadequacy, or dangerous condition in it.

27.     The Policy contains the follow definitions relevant to this action:

**12. Completed operations** means **your work** that has been completed, and does not include **your work** that has been abandoned by you.

**\*\*\***

**24. Defect(s)** means a flaw, shortcoming, imperfection, deficiency or inadequacy.

**\*\*\***

**43. Impaired Property(ies)** mean(s) tangible property, other than **your product** or **your work** that cannot be used or is less useful because:

**a.** it incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by repair, replacement, adjustment or removal of **your product** or **your work** or by you fulfilling the terms of a contract or agreement.

**44. Insured contract(s)** mean(s):

**a.** Except with respect to **Coverage Part 2.D Pollution Liability For Your Sites**:

**\*\*\***

**(6)** that part of any other contract or agreement pertaining to your business…under which you assume the tort liability of another party to pay for **bodily injury**, **property damage** or **environmental damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of a contract or agreement.

**\*\*\***

**60. Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**\*\*\***

**67. Policy period** means the period set forth in Item 2. of the Declarations….

**68. Pollutant(s)** mean(s) any solid, liquid, gaseous or thermal irritant or contaminant….

**69. Pollution incident(s)** means…the discharge dispersal, release, seepage, or escape of any **pollutant** into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including ground water….

**70. Products – completed operations hazard**

    **a.** includes all **bodily injury**, **property damage** or **environmental damage** occurring away from premises you own or rent and arising out of **your product** or **your work**, except:

        **(1)** products that are still in your physical possession; or

        **(2)** work that has not yet been completed or abandoned….

**71. Product recall** means the recall or withdrawal:

    **a.** from the market; or

    **b.** from use by any other person or organization;

of **your products**, or products which contain **your products**, because of known or suspected **defects** that creates a dangerous condition in **your product**…which has caused or is reasonably expected to cause **bodily injury**, physical injury to tangible property other than **your product**, or **environmental damage**.

**72. Product recall expense(s)** means those reasonable and necessary extra expense, listed below, paid and directly related to a **product recall**:

    **a.** costs of notification

    **b.** costs of stationary, envelopes, production of announcements and postage or facsimiles;

    **c.** costs of overtime paid to your regular non-salaried **employees** and costs incurred by **employees**, including costs of transportation and accommodations;

    **d.** costs of hiring independent contractors and other **temporary workers**;

    **e.** costs of transportation, shipping or packaging;

    **f.** costs of warehouse storage space;

    **g.** costs of proper disposal of **your products** that contain **your products**, that can not be reused, not exceeding your purchase price or your cost to produce the products….

\*\*\*

**75. Property damage** means…solely with respect to **Coverage 1. General Liability**:

    **(1)** physical injury to tangible property, including any resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **(2)** loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it….

**Property damage**…does not include **cleanup costs**, **emergency cleanup costs** or **environmental damage**.

76. **Responsible insured(s)** mean(s) your **executive officers**, any manager or supervisor of a **scheduled site** or **unscheduled site**; your corporate risk manager; or any other manager or supervisor that is responsible for environmental affairs, control or compliance.

\*\*\*

91. **Your product(s)** mean(s):

   **a.** any goods or products…manufactured, sold, handled, distributed, or disposed of by (1) you; (2) others trading under your name; or (3) a person or organization whose business or assets you have acquired; and

   **b.** containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **Your product** includes:

   **a.** warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

   **b.** the providing or failing to provide warnings or instructions.

92. **Your work** means:

   **a.** work or operations performed by you or on your behalf; and

   **b.** materials, parts or equipment furnished in connection with such work or operations.

   **Your product** includes:

   **a.** warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**;

   **b.** the providing or failing to provide warnings or instructions; and

   **c.** **completed operations**.

**B.     The Clarke Lawsuit**

28.     Lee Container Corporation manufactures and sells plastic containers.

29.     Inhance Technologies provides fluorination services, a chemical process that adds a protective barrier to existing plastic containers to prevent vapors from escaping the container and oxygen from entering the container.

30.     On December 21, 2022, Clarke filed a lawsuit in the Circuit Court of Cook County, Illinois, Law Division, captioned *Clarke Mosquito Control Products, Inc. v. Barrel*

*Accessories and Supply Co., Inc., et al.*, Case No. 2022L011338 (the "Underlying Lawsuit"),

against Barrel Accessories and Supply Company, Inc., Basco, Inc., Basco Logistics, Inc.

(referred to collectively as "Basco"), the Lee Container, Lee Container Iowa, LLC, Lee

Container Iowa Holdings, Inc., and Grief Packaging, LLC ("Lee Defendants"), and the Inhance

Defendants, seeking damages arising out the alleged contamination of Clarke's liquid mosquito

product with chemical compounds known as Perfluoroalkyl and Polyfluoroalkyl Substances

("PFAS").

31.     According to Clarke's Complaint in the Underlying Lawsuit (the "Clarke

Complaint"), Clarke distributes products designed to combat mosquito borne illnesses and

control mosquito populations, including a pesticide product known as Anvil 10+10 ("Anvil").

32.     The Clarke Complaint alleges that between 2018 and 2020, Clarke purchased

plastic containers from Basco and the Lee Defendants for the purpose of shipping Clarke's Anvil

product to its customers, and that all of those containers were fluorinated by the Inhance

Defendants.

33.     According to the Clarke Complaint, these containers purchased between 2018 and

2020 were contaminated with PFAS and when Clarke's Anvil product was stored in the

containers it caused Clarke's Anvil product to be contaminated with PFAS as well.

34.     This in turn rendered Anvil and other Clarke liquid products unfit for their

intended use and resulted in Clark violating the Federal Insecticide, Fungicide and Rodenticide

Act ("FIFRA").

35.     The Clarke Complaint alleges that on October 5, 2020, the United States

Environmental Protection Agency ("EPA") Region 1 Office sent Clarke a request for

information letter seeking to discover the source of PFAS contamination detected in its Anvil product.

36.     Clarke alleges that it responded to EPA's request for information letter on October 15, 2020 with a comprehensive disclosure indicating its internal investigation did not reveal any PFAS in the production process for Anvil.

37.     The Clarke Complaint alleges that in 2020 Clarke notified Basco and the Lee Defendants of the EPA's inquiry and belief that the Anvil product was contaminated with PFAS.

38.     According to the Clarke Complaint, in late 2020, the EPA sent a request for information letter to the Inhance Defendants notifying the Inhance Defendants that its fluorination process may contain PFAS and seeking information regarding potential PFAS contamination caused by the Inhance fluorination process.

39.     The Clarke Complaint further alleges that on December 23, 2020, the EPA advised Clarke that EPA test results indicated that the fluorinated plastic containers caused the alleged PFAS contamination of Clarke's Anvil product.

40.     The Clarke Complaint alleges that Clarke also engaged a testing company to test both the fluorinated containers and Anvil product.  According to the Clarke Complaint, the testing results, received in January 2021, confirmed that the Basco and Lee Defendant containers fluorinated by the Inhance Defendants were contaminated with PFAS.

41.     Thus, according to the Clarke Complaint, by January 2021 at the latest, Clarke's Anvil product had been contaminated by PFAS from the Lee Defendant containers fluorinated by the Inhance Defendants and both the Lee Defendants and the Inhance Defendants were aware of the issue.

42.     According to the Clarke Complaint, in January 2021 the EPA notified Clarke it intended to pursue an enforcement action against Clarke under FIFRA vis-à-vis the alleged PFAS contamination detected in its products.

43.     The Clarke Complaint alleges that during a call held on January 8, 2021, the EPA also threatened a Stop Sale Use and Removal Order if Clarke did not quarantine, recall, and destroy the PFAS-contaminated Anvil product.

44.     The Clark Complaint further alleges that on that call Clarke committed to enact the quarantine, recall, and destruction of the product and convinced the EPA that it could and would do so without an enforcement action or other Order from the EPA.

45.     The Clarke Complaint alleges that on June 15, 2021, Clarke provided the EPA with a voluntary collection, consolidation, and disposal plan for its Anvil product that might be contaminated with PFAS and that it enacted that plan on or about October 14, 2021 after receiving approval from the EPA.

46.     The Clarke Complaint asserts that all Clarke product potentially contaminated with PFAS was recalled from Clarke's customers and that Clarke allegedly replaced the product at no cost to its customers.

47.     According to the Clarke Complaint, as a direct result of the contaminated containers purchased from Basco and the Lee Defendants that were fluorinated by the Inhance Defendants Clarke has suffered damages in excess of $5,400,000.

48.     Significantly, the Clarke Complaint alleges the Inhance Defendants had prior knowledge that the fluorination process contained PFAS—even before notices were provided by Clarke and the EPA—and was specifically aware that the fluorination of plastic containers created products that were contaminated with PFAS.

49.     As it relates to the Inhance Defendants, the Clarke Complaint asserts causes of action for strict product liability, negligence, and violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act.

50.     The strict product liability cause of action alleges that the containers sold by the Lee Defendants and fluorinated by the Inhance Defendants were defective because they had a propensity to, and did in fact, leach PFAS into the Anvil product contained therein, thereby rendering the containers unreasonably dangerous.

51.     According to the Clarke Complaint, the Inhance Defendants knew the process for treating containers causes PFAS contamination but, despite this knowledge, continued to market its fluorination services without disclosure.

52.     The negligence cause of action alleges that the Inhance Defendants had a duty to Clarke and the general public to use a treatment process that would not cause PFAS contamination and that the Inhance Defendants breached this duty by utilizing a fluorination process that caused PFAS contamination.

53.     Finally, Clarke alleges that the Inhance Defendants violated the Illinois Consumer Fraud and Deceptive Trade Practices Act by actively marketing their fluorination process without disclosing the risk of PFAS contamination, despite being fully aware that its fluorination process caused PFAS contamination.  Clarke asserts that but for the Inhance Defendants' decision to conceal the risk of PFAS contamination caused by the Inhance fluorination process, Clarke would not have purchased the fluorinated containers at issue in the lawsuit.

54.     As it relates to the Lee Defendants, the Clarke Complaint asserts causes of action for breach of the implied warranty of merchantability, strict product liability, breach of contract, and negligence.

55.     Clarke alleges that Lee Defendants breached the implied warranty of merchantability because the fluorinated plastic containers sold by the Lee Defendants were not of merchantable quality in that they had a propensity to, and did in fact, leach PFAS into Clarke's Anvil product.

56.     The strict product liability cause of action alleges that the containers sold by the Lee Defendants and fluorinated by the Inhance Defendants were defective because they had a propensity to, and did in fact, leach PFAS into the Anvil product contained therein, thereby rendering the containers unreasonably dangerous.

57.      For the breach of contract cause of action, Clarke alleges that a contract existed between the Lee Defendants and Clarke based on their course of business pursuant to which the Lee Defendants knew that the containers sold by the Lee Defendants would be used for storage and transportation of chemicals, and that the Lee Defendants breached the contract by selling containers that caused PFAS to leach into the chemical products Clarke placed in the containers.

58.     For the negligence cause of action, Clarke alleges that the Lee Defendants owed a duty to Clarke and the general public to ensure that its containers were free from harmful contaminants and that it breached that duty by selling containers that were contaminated with PFAS.

59.     For all these causes of action, Clarke seeks damages associated with the product recall including the loss of product, cost of replacement products, loss of profits due to products that could not be sold, loss of any value of the container, and operational downtime as a result of the identification, retrieval, and destruction of contaminated product, as well as punitive damage, exemplary damages, and attorneys' fees.

**C.**     **Inhance Technologies' and Lee Container's Claims to Navigators**

60.     The Clarke Complaint alleges that it sent formal notice of claim and demand letters to Basco, the Lee Defendants, and the Inhance Defendants in November, 2021.

61.     On November 22 and 23, 2021, Inhance Technologies provided notice to Navigators of the claims against the Inhance Defendants and Lee Defendants forming the basis of the Clarke Lawsuit.

62.     On December 22, 2021, Navigators issued separate letters to Inhance Technologies and Lee Container in which Navigators agreed to provide Inhance Technologies and Lee Container with a defense against the allegations of the Clarke Lawsuit under Coverage Part. 1.A. of the Policy, subject to Navigators' reservation of its rights to decline coverage and withdraw from the defense for the reasons specified in the letter.

**COUNT ONE**
**REQUEST FOR DECLARATORY RELIEF**
**No Duty to Defend or Indemnify Inhance Co-Member Because It is Not an Insured**

63.     Navigators restates and incorporates the preceding paragraphs.

64.     An actual controversy exists as to whether Navigators has an obligation to defend and therefore indemnify Inhance Co-Member for the claims asserted in the Underlying Lawsuit.

65.     Item 1 of the Declarations, as modified by Endorsement No. 1-P identifies Inhance Technologies as the **first named insured** and Inhance Technologies Holdings as an additional named insured under the Policy.

66.     Inhance Co-Member is not identified in the Policy as a Named Insured.

67.     Moreover, Inhance Co-Member is not an insured under the Policy because it does not satisfy any of the conditions in SECTION II. WHO IS AN INSURED necessary to qualify as an insured.

68.     Based on information and belief, Inhance Co-Member is not a subsidiary, associated, affiliated, or allied company or corporation of which either Inhance Technologies or Inhance Technologies Holdings has at least a 50% ownership interest.

69.     Based on information and belief, Inhance Co-Member is not an organization with whom Inhance Technologies or Inhance Technologies Holdings agreed in a written contract to include as an insured.

70.     Inhance Co-Member is not a newly acquired or formed organization.

71.     Inhance Co-Member does not have at least a 50% ownership interest over Inhance Technologies or Inhance Technologies Holdings.

72.     WHEREFORE, Navigators requests a declaration that it has no duty to defend or indemnify Inhance Co-Member for the claims asserted in the Clarke Lawsuit because it is not an insured of the Policy.

<u>**COUNT TWO**</u>
**REQUEST FOR DECLARATORY RELIEF**
**No Duty to Defend or Indemnify Because the Claims in the Underlying Lawsuit Do Not Satisfy the Insuring Agreements in the Policy**

73.     Navigators restates and incorporates the preceding paragraphs.

74.     An actual controversy exists as to whether Navigators has an obligation to defend and therefore indemnify the claims asserted in the Underlying Lawsuit because the claims do not satisfy any of the insuring agreements under the Policy.

75.     The only potentially applicable coverage part is Coverage Part 1 because all of the coverages provided in Coverage Part 2 require a **pollution incident**, i.e., a discharge or release of a **pollutant** into water, land, a structure or the atmosphere and the Complaint contains no such allegation.

76.     Within Coverage Part 1, the only potentially applicable coverages are Coverage Parts 1.A., 1.D., and 1.G.

**1.      The Claims Do Not Satisfy the Insuring Agreement of Coverage Part 1.A.**

77.     Coverage Part 1.A., "Bodily Injury and Property Damage," covers damages because of **bodily injury** or **property damage** caused by an **occurrence**, where the **property damage** occurs during the **policy period**.

78.     The Clarke Complaint does not assert **bodily injury**.

79.     The Clarke Complaint alleges the plastic containers sold by the Lee Defendants and fluorinated by the Inhance Defendants leached PFAS into Clarke's Anvil product within the container, resulting in contamination and damage to Clarke's product.

80.     Even if the damage alleged by Clarke satisfies the definition of **property damage**, the damage did not occur during the March 1, 2021 to March 1, 2022 **policy period** and thus there is no coverage under Coverage Part 1.A. Instead, it occurred before the **policy period**.

81.     According to the Clarke Complaint, (1) Clarke purchased all of the allegedly contaminated containers sold by the Lee Defendants and fluorinated by the Inhance Defendants between 2018 and 2020 and (2) Clarke's products were contaminated with PFAS from those containers before October 2020 but by no later than January 2021, well before the **policy period** commenced.

82.     Specifically, according to the Clarke Complaint, (a) Clarke was notified by the EPA on October 5, 2020 that testing had found PFAS contamination in Clarke's Anvil product; (b) the EPA notified Clarke in December 2020 that its testing confirmed that the plastic containers sold by the Lee Defendants and fluorinated by the Inhance Defendants contaminated Clarke's product with PFAS; and (c) in January 2021, Clarke's own independent testing

confirmed that the plastic containers sold by the Lee Defendants and fluorinated by the Inhance Defendants were contaminated with PFAS and caused contamination of Clarke's product.

83.     The claims are not covered by Coverage 1.A for another reason: the damage alleged in the Clarke Complaint was not the result of an **occurrence**, defined by the Policy as an accident.

84.     The Clarke Complaint expressly asserts that the Inhance Defendants had prior knowledge of the flaws in its fluorination process (even before notices were provided by Clarke and the EPA) and were specifically aware that the fluorination of plastic containers created products that were contaminated with PFAS.  The Clarke Complaint further alleges that, despite this knowledge, the Inhance Defendants continued to market its fluorination services without disclosure and seeks damages arising out of this intentional and deceptive conduct.

85.     Accordingly, given the Inhance Defendants' alleged knowledge of the PFAS contamination caused by its fluorination process, the contamination of Clarke's products was not an accident but the natural and expected result of intentional conduct.

**2.     The Claims Do Not Satisfy the Insuring Agreement of Coverage Part 1.D.**

86.     Coverage Part 1.D.1.a. "Products Pollution Liability" provides coverage, in part, for (1) **property damage** resulting from a **pollution incident** caused by **your product** and included in the **products-completed operations hazard** or (2) **property damage** caused by exposure to or contact with substances originating from **your product** and included in the **products-completed operations hazard**, as long as the **property damage** is the result of an **occurrence** and occurs during the **policy period**.

87.     The claims in the Underlying Lawsuit are not covered by Coverage Part 1.D.1.a. because according to the Clarke Complaint, the containers sold by the Lee Defendants and fluorinated by the Inhance Defendants were purchased before the **policy period** and caused the

20

contamination of Clarke's products before the **policy period;** and thus the damage did not occur during the **policy period**.

88.     The claims in the Underlying Lawsuit are not covered by Coverage Part 1.D.1.a. because the alleged damage is not the result of an **occurrence**: according to the Clarke Complaint, the Inhance Defendants were aware that their fluorination process caused PFAS contamination and thus the damage was the natural and probable consequence of their intentional acts, not an accident.

89.     Additionally Coverage Part 1.D.1.a. part (1) does not provide coverage because there has been no allegation of a release of a **pollutant** on land, air, water, or in a building and thus there are no allegations that a **pollution incident** occurred.

90.     Lastly, Coverage Part 1.D.1.b. does not provide coverage because it requires either **bodily injury** caused by building equipment or damage caused by a **hostile fire**, neither of which are alleged in the Clarke Complaint.

**3.     The Claims Do Not Satisfy the Insuring Agreement of Coverage Part 1.G.**

91.     Coverage Part 1.G., entitled "Product Recall Expense," provides first-party coverage to insureds in the form of reimbursement for **product recall expenses** incurred by the insured because of a **product recall**, as defined by the Policy, as long as the **product recall** is initiated in the coverage territory during the **policy period** because either (1) the insured determines that the **product recall** is necessary; or (2) an authorized government entity has ordered the insured to conduct a product recall.

92.     According to the Clarke Complaint, Clarke incurred expenses and damages associated with the recall and disposal of Clarke's potentially contaminated liquid product which were housed in the containers sold by the Lee Defendants and fluorinated by the Inhance Defendants.

21

93.     First, Coverage Part 1.G does not provide coverage for the claims because according to the Clarke Complaint, no insured determined that the recall was necessary—it was Clarke who made the determination; and no government entity ordered the recall—it was voluntarily performed by Clarke.

94.     Second, Coverage Part 1.G does not provide coverage because Clarke performed the recall and incurred the expenses for the recall, rather than an insured, as required by the insuring agreement.

95.     Third and relatedly, Coverage Part 1.G does not provide coverage because none of the insureds are seeking reimbursement for **product recall expenses** as defined by the Policy. Instead, Clarke is asserting liability for and seeking damages from the Lee Defendants and Inhance Defendants arising out of Clarke's recall of its own product.

96.     Fourth, Coverage Part 1.G. does not provide coverage because what Clarke performed was not a **product recall**, which requires the recall of **your product** (i.e., an insured's product) or products that contain **your product**: the recall was of Clarke's liquid product, not of the Lee Defendants or Inhance Defendants' products or even products containing Lee or Inhance's products. Clarke's liquid product that was recalled did not contain Inhance's fluorination or Lee's container.

97.     Fifth, Coverage Part 1.G does not provide coverage because the **product recall** was not initiated during the **policy period**. The Policy provides that "initiation" is deemed to have been made when **employees** are notified of the decision to conduct the **product recall**. Here, according to the Clarke Complaint, Clarke agreed to conduct a voluntary product recall during a call in January 2021. Its employees had to have been notified shortly after the decision was made and prior to March 1, 2021 when the Policy incepted. The Clarke Complaint alleges

that it submitted its recall proposal plan to the EPA in June 2021. Because of the complex, complicated nature of the plan—as described by Clarke in the Complaint—it had to have taken months to prepare and Clarke employees had to have been notified in order to assist in completing the plan, well before the March 1, 2021 Policy inception date. Under either scenario, the **product recall** was initiated prior to the **policy period**.

98.       WHEREFORE, Navigators requests a declaration that Navigators owes no duty to defend and therefore no duty to indemnify anyone in connection with the claims in the Underlying Lawsuit because those claims do not satisfy any of the insuring agreements in the Policy.

<u>**COUNT THREE**</u>
**REQUEST FOR DECLARATORY RELIEF**
**(In the Alternative)**
**No Duty to Defend or Indemnify Because the Claims Are Excluded By Multiple Exclusions**

99.       Navigators restates and incorporates the preceding paragraphs.

100.      An actual controversy exists as to whether Navigators has an obligation to defend and therefore indemnify the claims asserted in the Underlying Lawsuit because the claims are excluded from coverage under the Policy.

101.      None of the claims in the Underlying Lawsuit satisfy the insuring agreements in the Policy and thus Navigators owes no duty to defend and no duty to indemnify anyone under the Policy.

102.      In the alternative, however, and if the Court were to determine that one of the insuring agreements was satisfied, the claims are excluded by numerous exclusions applicable to some or all of the coverage parts in the Policy.

1.      **To the Extent the Claims Satisfy Any One the Insuring Agreements, Which They Do Not, the Claims are Excluded By the Common Exclusions Applicable to All Coverages in Coverage Part 1.**

103.    Paragraph H, Common Exclusions, of Coverage 1 General Liability lists exclusions that apply to all of the coverages and insuring agreements in Coverage Section 1.

104.    Common Exclusion a. – Expected or Intended Injury, bars coverage for **property damage** expected or intended from the standpoint of the insured.

105.    As explained above, the Clarke Complaint explicitly asserts that the Inhance Defendants had prior knowledge of the flaws in its fluorination process and was specifically aware that its fluorination of plastic containers created products that were contaminated with PFAS. The Clarke Complaint further alleges that, despite this knowledge, the Inhance Defendants continued to market its fluorination services without disclosure. Given the Inhance Defendants' alleged knowledge of the PFAS contamination caused by its fluorination process, the contamination of Clarke's products was either expected or intended and claims and damages arising from such contamination are excluded.

106.    Common Exclusions l. – Damage to Impaired Property or Property Not Physically Injured excludes coverage for **property damage** to **impaired property** or property that has not been physically injured, arising out of a **defect**, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

107.    Clarke's claims arise out of damage to its liquid product stored inside the containers sold by the Lee Defendants and fluorinated by the Inhance Defendants. That product is **impaired property** under the Policy because  it is tangible property that is less useful because it has been incorporated with the plastic containers and the chemicals in the fluorination—the

product and work of the insureds. Clarke's product can be restored by removing the PFAS contaminated fluorinated containers and/or by the Lee Defendants fulfilling the alleged terms of their contract with Clarke to provide containers suitable for holding Clarke's materials not contaminated with PFAS.

108.    Furthermore, the damage to Clarke's **impaired property** arises out of an alleged deficiency or dangerous condition in the containers sold by the Lee Defendants and the fluorination process applied by the Inhance Defendants—the product and work of the insureds— and the Lee Defendants' alleged failure to perform its contract with Clarke to provide containers suitable for holding Clarke's product not contaminated with PFAS.

109.    For these reasons, the claims in the Underlying Lawsuit are excluded from Coverage Part 1 by Common Exclusion l. – Damage to Impaired Property or Property Not Physically Injured.

110.    Common Exclusion v. – Known Injury or Damage excludes **property damage** that occurred in whole or in part prior to the **policy period** and was known to any **responsible insured** prior to the inception date. The exclusion further provides that any continuation or resumption of such property damage during or after the **policy period** will be deemed to have been known prior to the **policy period**.

111.    As discussed above, according to the Clarke Complaint, the damage to its product—contamination with PFAS—occurred in 2020, but at the latest by January 2021, before the **policy period**.

112.    Furthermore, the Clarke Complaint alleges that in late 2020, the EPA sent a request for information letter to the Inhance Defendants notifying the Inhance Defendants that its

fluorination process contains PFAS and seeking information regarding potential PFAS contamination caused by the Inhance fluorination process.

113.     According to the Clarke Complaint, the damage occurred prior to the **policy period** and the Inhance Defendants knew of the alleged damage before the **policy period** and thus Exclusion v. – Known Injury or Damage bars coverage.

**2.     To the Extent the Claims Satisfy the Insuring Agreements in Coverage Parts 1.A or 1.D, Which They Do Not, the Claims are Also Excluded by the Recall of Products, Work or Impaired Property Exclusion.**

114.     Coverage Parts 1.A. and 1.D. are also subject to Common Exclusion m. – Recall of Products, Work or Impaired Property.  Exclusion m. does not apply to Coverage 1.G.

115.     Common Exclusion m – Recall of Products, Work or Impaired Property bars coverage for damages claimed for any cost or expense incurred by an insured or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of: (1) **your product**; (2) **your work**; or (3) **impaired property**; if such product, work, or property is recalled because of a known or suspected **defect**, deficiency, inadequacy or dangerous condition in it.

116.     This exclusion bars coverage for the claims in the Underlying Lawsuit because all of the damages sought in the Clarke Complaint are for or arise out of expenses incurred by Clarke for the recall and disposal of Clarke's product (and for loss of use of the product), because of the alleged presence of PFAS contamination therein, which is perceived as a defect or a dangerous condition. The exception does not apply because there has been no sudden or accidental physical injury to an insured's product.

**3.      To the Extent the Claims Satisfy the Insuring Agreements in Coverage Part 1.A, Which They Do Not, the Claims Are Also Excluded by the Pollution Exclusion Applicable to Coverage Part 1.A.**

117.      Coverage Part 1.A is also subject to a "Pollution" exclusions which states that Coverage Part 1.A. does not apply to **property damage** "based upon or arising out of any **pollutant(s)** or **pollution incident(s)**."  Coverage Part 1.A. also does not apply to costs arising out of any demand or requirement that any insured or others test for, remediate, remove, contain, or in any way respond to **pollutant(s)**.

118.      The exclusion bars coverage because according to the Clarke Complaint, chemical compounds referred to as PFAS  contaminated its Anvil product, causing damage to the product, and Clarke seeks damages arising out of its testing for the contaminant and efforts to remove, contain, and respond to the PFAS contamination in its products.

**4.      To the Extent the Claims Satisfy the Insuring Agreement in Coverage Part 1.G, Which They Does Not, the Claims are Also Excluded by the Specific Exclusions Applicable to Coverage Part 1.G.**

119.      Coverage Part 1.G is also subject to its own "Coverage Part 1.G. Exclusions."

120.      Exclusion a. – Defense of Claim, excludes coverage for the defense of a claim or suit against a named insured for liability arising out of a **product recall**.

121.      Here, to the extent the Underlying Lawsuit involves a **product recall**, Clarke seeks liability against the Lee Defendants and the Inhance Defendants for costs and damages arising out of that **product recall**, and thus Exclusion a. bars coverage for costs associated with the defense of the Underlying Lawsuit.

122.      Exclusion h. – Known Defect excludes coverage for a **product recall** initiated because of a defect in **your product** known to exist by the insured or its executive officers, prior to the date when Coverage Part 1.G. was first issued, March 1, 2021.

123.    According to the Clarke Complaint, its product was recalled due to PFAS contamination caused by the fluorination applied by the Inhance Defendants to the Lee Defendants' containers.

124.    According to the Clarke Complaint, in late 2020, Clarke sent notice letters to the Lee Defendants of the EPA inquiry and the EPA sent a request for information letter to the Inhance Defendants notifying the Inhance Defendants that its fluorination process may contain PFAS and seeking information regarding potential PFAS contamination caused by the Inhance fluorination process.

125.    According to the Clarke Complaint, the Lee Defendants and the Inhance Defendants knew of the potential issue with the containers and the fluorination process prior to March 1, 2021, when Coverage Part 1.G and the rest of the Policy were issued.

126.    Thus, to the extent the events could be characterized as a **product recall**, the exclusion applies because it was performed due to an issue with the insureds' products which they knew existed before March 1, 2021.

127.    Exclusion j. – Third Party Damages, Legal Liability, Fines and Penalties, excludes coverage for compensatory damages; any legal liability of any kind; or any fines, penalties, punitive, or exemplary, or other non-compensatory damages imposed upon an insured.

128.    The claims in the Underlying Lawsuit are not first-party claims made by an insured. Instead, in the Underlying Lawsuit, Clarke—not an insured under the Policy—contends that the Lee Defendants and Inhance Defendants are legally liable for the recall of its product and all associated damages, including compensatory damage, consequential damages, punitive damages, and other statutory penalties. Clarke does not seek any other kind of damages or any other kind of liability other than that which is excluded by Exclusion j.

129.     WHEREFORE, Navigators requests a declaration in the alternative that, to the extent the claims in the Underlying Lawsuit satisfy any of the insuring agreements in the Policy, Navigators owes no duty to defend and therefore no duty to indemnify anyone in connection with the claims in the Underlying Lawsuit because those claims are excluded from coverage by one or more of the exclusions in the Policy.

### PRAYER FOR RELIEF

WHEREFORE, Navigators Specialty Insurance Company respectfully requests that the Court grant judgment awarding the following relief:

a.     An order declaring the parties' respective rights and obligations under the Policy pursuant 28 U.S.C. § 2201, and specifically that Navigators does not owe a duty to defend and therefore does not owe a duty to indemnify Lee Container or the Inhance Defendants in connection with the Underlying Lawsuit;

b.     Granting supplemental relief pursuant to 28 U.S.C. § 2201-2202, including any proper relief in regard to this Court's declaration of the parties' rights and obligations under the Policy;

c.     Costs of court; and

d.     Such other and further relief as may be appropriate.

Dated: August 4, 2023                         Respectfully submitted,

                                              HUSCH BLACKWELL LLP

                                              */s/ Scott L. Davis*
                                              Scott L. Davis
                                              Texas Bar # 05547030
                                              1900 N. Pearl Street, Suite 1800
                                              Dallas, Texas 75201
                                              Phone: (214) 999-6100
                                              Fax: (214) 999-6170
                                              Scott.Davis@huschblackwell.com